IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JESUS MANUEL URIAS | § | |
| TDCJ-CID No. 02533883, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:25-CV-88-Z-BR |
| | § | |
| MARTIN BIRKENFELD, *et al.,* | § | |
| | § | |
| Defendants. | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## TO DISMISS COMPLAINT IN PART

Before the Court is the Complaint (ECF 3) filed by Plaintiff Jesus Manuel Urias ("Urias") against Defendants Martin Birkenfeld ("Birkenfeld") and Tysen Auldridge ("Auldridge"), alleging violations of Urias' civil rights under 42 U.S.C. § 1983. Urias filed this lawsuit *pro se* while a prisoner in the San Saba Unit of the Texas Department of Criminal Justice ("TDCJ") in San Saba, Texas, and has been granted permission to proceed *in forma pauperis*. As such, his lawsuit is subject to preliminary screening as provided by the Prison Litigation Reform Act ("PLRA"). Pursuant to such screening and for the reasons stated below, the Magistrate Judge recommends that Urias' Complaint be DISMISSED in part under 28 U.S.C. §§ 1915 and 1915A.

## I. STANDARD OF REVIEW

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (2017); *see also* Section 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of

1

whether the prisoner is proceeding *in forma pauperis*). A frivolous complaint lacks any arguable

basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

A complaint has no arguable basis in fact if it rests upon clearly fanciful or baseless factual

contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal

theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). When analyzing a

prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations,

responses to a questionnaire, and authenticated prison records. *Wilson v. Barrientos*, 926 F.2d 480,

483-84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that

responses to a questionnaire or testimony given during an evidentiary hearing are incorporated into

the plaintiff's pleadings).

In evaluating the sufficiency of a complaint, the Court accepts well-pleaded factual

allegations as true, but does not credit conclusory allegations that merely restate the legal elements

of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). While courts hold

*pro se* plaintiffs to a more lenient standard than attorneys when analyzing complaints, such

plaintiffs must nevertheless plead factual allegations that raise the right to relief above a

speculative level. *Id.* (*citing Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## II. LEGAL ANALYSIS

### A.    Factual Background.[1]

On or about November 8, 2023, Urias was riding in his daughter's vehicle in Amarillo,

Texas, when she was pulled over for a traffic violation by an Amarillo Police Department ("APD")

officer, later determined to be Auldridge. (ECF 3 at 4; ECF 9 at 2). While Auldridge was in his

---

[1]These background facts are taken from Urias' Complaint (ECF 3) and questionnaire responses (ECF 9)
and are assumed to be true for the purpose of evaluating the merits of Urias' causes of action.

patrol car running a check on Urias' daughter's license, Urias exited his daughter's vehicle and began running away. (ECF 9 at 4). He claims that Auldridge gave chase and ultimately tackled him into a dumpster, resulting in severe injury to Urias, including five broken ribs, a collapsed lung, dislocated vertebrae and other broken bones. (*Id*. at 5; ECF 3 at 4). Urias was taken to the hospital, where he was immediately put into the intensive care unit. (*Id*.).

Urias filed suit against Auldridge, claiming that Auldridge used excessive force against him. He also sues Birkenfeld, the APD chief of police, as Auldridge's supervisor. (ECF 3). For the reasons stated below, Urias' claims against Birkenfeld should be dismissed, as should Urias' claim against Auldridge in his official capacity.

**B.      Official Capacity Claims.**

Urias states that he is suing Defendants in their individual and official capacities. (ECF 9 at 6). An official capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent and, in this case, a suit against Defendants in their official capacity would be considered a suit against their employer, the City of Amarillo. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *see also Ricks v. Mack*, No. 4:15-CV-209-A, 2015 WL 2330133, at *2 (N.D. Tex. May 14, 2015) (finding city was the proper defendant for official capacity claims asserted against employees of city's police department); *see also Gordon v. Neugebauer*, No. 1:14-CV-0093-J, 2014 WL 5531734, at *5 (N.D. Tex. Oct. 31, 2014) (construing all allegations against the Abilene Police Department as allegations against the City of Abilene).

Municipalities, including counties and cities, may be held liable under Section 1983 if the execution of one of its customs or policies deprives a plaintiff of his or her constitutional rights. *Hampton Co. Nat'l Sur., LLC v. Tunica County*, 543 F.3d 221, 224 (5th Cir. 2008); *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978). It is well settled that a municipality "may not be

held liable under § 1983 on a basis of vicarious liability." *Hicks-Fields v. Harris Cnty., Texas*, 860 F.3d 803, 808 (5th Cir. 2017) (citing *Monell,* 436 U.S. at 690-91).

"To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "Official policy" is defined as:

> 1.     A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2.     A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam); accord *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). "The description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)); accord *Piotrowski v. City of Houston*, 237 F.3d 567, 578-79 (5th Cir. 2001). "[A] complaint must contain either direct allegations on every material point necessary to sustain recovery ... or contain allegations from

4

which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (citation omitted).

Despite being given the opportunity (ECF 9 at 1), Urias has failed to identify a policy or custom that was the moving source of a constitutional violation in support of his impermissibly conclusory allegation. Urias has failed to state a viable Section 1983 claim against the City of Amarillo, and his official capacity claims against Defendants should be dismissed.

**C.    Supervisory Liability Claim Against Birkenfeld.**

Urias alleges that Birkenfeld, as APD chief of police, is liable as the supervisor who allows officers such as Auldridge to use excessive force. (ECF 9 at 1-2). Under Section 1983, however, supervisors are not liable for the actions of others, including their subordinates. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Instead, only the direct acts or omissions of the supervisor will support a claim for individual liability under Section 1983. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 692 (1978); *Jones v. Lowndes County, Miss.*, 678 F.3d 344, 349 (5th Cir. 2012); *see also Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992) (a plaintiff bringing a Section 1983 action must "specify the personal involvement of each defendant"). A supervisor may be held liable under Section 1983 only when (1) the supervisor was personally involved in the constitutional deprivation, (2) there is a causal connection between the supervisor's wrongful conduct and a constitutional deprivation, or (3) the supervisor implemented a policy so deficient that the policy itself violates constitutional rights and is the moving force behind a constitutional deprivation. *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987); *see also Peña v. City of Rio Grande City*, 879 F.3d 613, 620 (5th Cir. 2018); *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008). As shown above, Urias has failed to allege that Birkenfeld implemented a deficient policy that violates Urias' constitutional rights.

5

Further, neither Urias' Complaint nor his questionnaire responses allege facts establishing that Birkenfeld was personally involved in a decision that violated Urias' constitutional rights. Urias' sole allegation of personal involvement by Birkenfeld is his claim that, after the use of force, Birkenfeld called him and said he was sorry for what had happened. (ECF 9 at 2). Urias' claim against Birkenfeld should be dismissed for failure to state a claim.

**D.    Excessive Force Claim Against Auldridge.**

Urias' use of force claim against Auldridge arises under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989) ("Today we make explicit what [has been] implicit ... and hold that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard...."); *Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999) (holding that plaintiff asserted a valid Fourth Amendment claim where he alleged defendant maliciously choked him after arresting plaintiff and searching his vehicle, but prior to transporting him to jail). To sufficiently state an excessive force claim, an arrestee such as Urias must demonstrate that he suffered: "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Hamilton v. Kindred*, 845 F.3d 659, 662 (5th Cir. 2017) (quoting *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004)).

**1.    Injury and Causation.**

An arrestee must allege more than *de minimis* injury to justify an excessive force finding, and the injury "must be evaluated in the context in which the force was deployed." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (citing *Williams*, 180 F.3d at 703). The injury requirement is "a sliding scale, not a hard cutoff." *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022)

(quoting *Buehler v. Dear,* 27 F.4th 969, 982 (5th Cir. 2022). This approach treats the degree of injury—even if minor—as interrelated to the reasonableness and excessiveness of the officer's force. "[A]lthough a *de minimis* injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is 'directly related to the amount of force that is constitutionally permissible under the circumstances.'" *Solis*, 31 F.4th at 981 (quoting *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017). The Court finds that Urias has sufficiently alleged more than *de minimis* injury against Auldridge for the purposes of his excessive force claim.

### 2.    Whether Auldridge's Actions Were Objectively Reasonable.

The Court next must determine if Auldridge's actions, as alleged by Urias, were objectively reasonable. "The objective reasonableness of the force ... depends on the facts and circumstances of the particular case, such that the need for force determines how much force is constitutionally permissible." *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008). In evaluating the objective reasonableness of an officer's use of force, courts consider the following nonexclusive criteria, known as the *Graham* factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Darden v. City of Fort Worth*, 880 F.3d 722, 728-29 (5th Cir. 2018) (quoting *Graham*, 490 U.S. at 396).

### a.    Severity of the Crime.

The first *Graham* factor, considered alone, supports a finding that the force applied by Auldridge was excessive. Although Urias' subsequent action—fleeing from officers—escalated the gravity of the circumstances surrounding the incident and the degree of force appropriate under those conditions, Urias initially was a passenger in a car pulled over for a moving violation. *See, e.g., Brown*, 524 F. App'x at 80 (applying *Graham* factors and noting that first factor favored

plaintiff, where defendant detained him on "suspicion that he had sold marijuana on some prior date—not a trivial offense, but also not one to put any person in real or immediate danger"); *Molina v. Collin Cnty.*, No. 4:17-CV-00017, 2017 WL 5441833, at *3 (E.D. Tex. Nov. 14, 2017) (concluding the first *Graham* factor favored arrestee, where officers had not witnessed him commit a crime and arrestee was merely a suspect to a crime). Although the Court notes that Urias has provided no explanation for his suspicious behavior, the first *Graham* factor favors Urias at this stage of the proceedings.

> **b.    Immediate safety threat.**

While Urias admits that he exited his daughter's vehicle and began running away, the facts as alleged by Urias do not indicate that he was an immediate safety threat, nor does he allege any facts indicating objectively reasonable grounds to believe that he was a safety threat, beyond the fact that he ran away. *See Breland v. City of Wiggins*, No. 1:17cv276-HSO-JCG, 2019 WL 1281249, at *9 (S.D. Miss. Mar. 20, 2019) (finding that defendant had objectively reasonable grounds to believe plaintiff posed an immediate threat to officers' safety, where plaintiff dug through pockets of his jacket, which had not been searched, and actively resisted defendant's efforts to confiscate and search the jacket). The second *Graham* factor weighs in Urias' favor based on the allegations in the Complaint.

> **c.    Resisting arrest.**

It is undisputed that Urias exited the car and began running while Auldridge was in his vehicle. (ECF 9 at 4). The apprehension of a fleeing suspect necessarily involves some degree of physical contact. *Bush*, 513 F.3d at 502 (observing that "the right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it" (internal quotation marks and citation omitted)). Due to Urias' flight, officers had not been able to

determine whether he posed a risk to officer safety. *See, e.g., Studzinski v. City of Austin*, No. A-19-CV-709-ML, 2020 WL 8674122, at \*7 (W.D. Tex. Dec. 28, 2020) (weighing *Graham* factors in determining whether use of force was constitutionally unreasonable, including the fact that the suspect had not been searched and was suspected of having a weapon). "Officers may consider a suspect's refusal to comply with instructions … in assessing whether physical force is needed to effectuate the suspect's compliance." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009).

"The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396-97. Urias admits that he ran from Auldridge when Auldridge was in his vehicle. However, out of an abundance of caution and assuming the truth of Urias' claims for the purpose of screening, as the Court is required to do, Urias' excessive force claim against Auldridge should survive screening.

## RECOMMENDATION

For the reasons stated above, the Magistrate Judge concludes that Urias' claims against Birkenfeld, and his official capacity claim against Auldridge, should be DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED October 14, 2025.


_Lee Ann Reno_
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

### * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).